Argued January 4, reversed and remanded February 25, 1977

STATE, *Respondent,*
*v.*
AUSTIN LOUIS SMITH, *Petitioner.*
(CA 5649, SC 24708)

560 P2d 1066

Paul J. DeMuniz, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

Kevin L. Mannix, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Denecke, Chief Justice, and Holman, Tongue, Bryson, Lent, Linde, Justices, and Mengler, Justice Pro Tempore.

TONGUE, J.

**TONGUE, J.**

Defendant, an enrolled member of the Warm Springs Indian Tribe, was on November 25, 1974, a prisoner in the Jefferson County jail. On that date he was taken for dental services by a Jefferson County deputy sheriff to the Warm Springs Dental Clinic, located on the Warm Springs Indian Reservation, also in Jefferson County.

While at that clinic, defendant escaped from the officer. He was not immediately recaptured, but in October 1975 was returned to the Jefferson County jail from Lampoc Federal Prison in California. Defendant was then charged with escape in the second degree under ORS 162.155.[1] The information charged that defendant on November 25, 1974:

> "* * * in Jefferson County, State of Oregon did unlawfully and knowingly escape from custody * * * having been incarcerated and being an inmate of a correctional facility, to wit: the Jefferson County Jail * * *."

Defendant appealed from a conviction on that

---

[1] ORS 162.155(1) provides, in part, as follows:

"(1) A person commits the crime of escape in the second degree if:
"* * * * *

"(c) He escapes from a correctional facility."

ORS 162.135 provides, in part:
"* * * * *

"(2) 'Correctional facility' means any place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order. 'Correctional facility' does not include a juvenile training school, and applies to a state hospital only as to persons detained therein charged with or convicted of a crime, or detained therein after acquittal of a crime by reason of mental disease or defect under ORS 161.295 to 161.380.

"(3) 'Custody' means the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order, but does not include detention in a correctional facility, juvenile training school or a state hospital.

"(4) 'Escape' means the unlawful departure, including failure to return to custody after temporary leave granted for a specific purpose or limited period, of a person from custody or a correctional facility but does not include failure to comply with provisions of a conditional release in ORS 135.245."

[ 253 ]

charge, assigning as error the denial by the trial court of his motions to dismiss the charge and for a directed verdict, both based upon a lack of jursidiction of the State of Oregon because of the fact that the crime was committed on the Warm Springs Indian Reservation, over which the state has no jurisdiction by reason of the provisions of various federal statutes. Defendant also moved for a directed verdict upon the further ground that the state failed to prove that defendant "actually escaped from the Correctional Facility."

The Court of Appeals affirmed defendant's conviction by an opinion which held that defendant's conduct constituted an "escape" by "unlawful departure" from a "correctional facility," as that crime is defined in ORS 162.135 and 162.155,[2] "unless the existence of federal jurisdiction excludes that of the state under the circumstances of this case." The Court of Appeals went on to hold, however, that despite the provisions of various federal statutes, the State of Oregon had jurisdiction over the offense even though defendant was an Indian and the "situs" of the offense was the Warm Springs Indian Reservation. 26 Or App 49, 552 P2d 261 (1976).

In reaching that conclusion the Court of Appeals cited and relied primarily upon statements in Cohen, Handbook of Federal Indian Law (1945), to the effect (at 117) that the state may have jurisdiction in cases involving both Indians and non-Indians "to a degree which calls into play the jurisdiction of a state government"; that (at 119) jurisdiction in such cases depends upon "situs, person and subject matter," and that (at 121) except in cases involving "only Indians on an Indian Reservation," the state has jurisdiction unless "there is involved a subject matter of special federal concern."

The Court of Appeals adopted this analysis by Cohen and held that "[p]revention of state prosecution of an Indian for unlawful escape from state custody

---

[2] *See* Commentary to the Oregon Criminal Code 94 (1975).

does not appear to be a matter of 'special federal concern'." 26 Or App at 54. The court also appeared to rely in part upon the conclusion that this was not a case involving only Indians on an Indian reservation because one of the persons involved was "a non-Indian state officer who legally had the Indian in custody." We accepted review because we question the validity of this analysis, particularly in view of federal statutes and federal decisions since the publication by Cohen in 1945.

Also, in our opinion, even the statements quoted by the Court of Appeals from Cohen do not clearly support such an analysis as applied to the facts and nature of this case. First of all, those statements are general in nature and applicable to all "Indian Affairs," not specifically to crimes on Indian reservations. (*See* Cohen, *supra,* 119-121.) Subsequently, in discussing the more specific question of state jurisdictions over crimes on Indian reservations, Cohen states (at 146):

> "It is clear that the original criminal jurisdiction of the Indian tribes has never been transferred to the states. Sporadic attempts of the states to exercise jurisdiction over offenses between Indians, or between Indians and whites, committed on an Indian reservation, have been held invalid usurpation of authority.
>
> "The principle that a state has no criminal jurisdiction over offenses involving Indians committed on an Indian reservation is too well established to require argument, attested as it is by a line of cases that reaches back to the earliest years of the Republic.
>
> "A state, of course, has jursidiction over the conduct of an Indian off the reservation. A state also has jurisdiction over some, but not all, acts of non-Indians within a reservation. But the relations between white and Indians in 'Indian country' and the conduct of Indians themselves in Indian country are not subject to the laws or the courts of the several states."[3]

[3] Also, even under the analysis adopted by the Court of Appeals, we question whether the presence of the state officer at the time and place of the escape made this a crime "involving" an Indian and a non-Indian, at

For the purposes of this opinion it is not necessary to trace the tangled and tragic history of the relations between the federal government and the various Indian tribes or to examine the many cases cited in support of this statement by Cohen, which we believe to be an accurate statement of the law on the subject as of 1945.[4]

In 1953, however, Congress enacted a further statute on this subject, Public Law 280.[5] The apparent reason for the enactment of that statute was the need to curtail lawlessness on Indian reservations.[6] By the terms of that statute, criminal jurisdiction over Indian reservations was granted to five states, including Oregon, *but with the important exception of the Warm Springs Indian Reservation.* Again, we need not, for the purposes of this opinion, consider the strong criticism of Public Law 280 by Indians, who apparently believe, among other things, that the federal gov-

---

least in the usual sense of crimes by Indians in which the victim of the crime is a non-Indian or vice versa. *Cf. State of Arizona ex rel Merrill v. Turtle,* 413 F2d 683 (9th Cir 1969).

[4] *See, e.g., Cherokee Nation v. Georgia,* 30 US (5 Pet) 1 (1831); *Worcester v. Georgia,* 31 US (6 Pet) 515 (1832); *Ex Parte Crow Dog,* 109 US 556 (1883); *United States v. Kagama,* 118 US 375 (1886); *Application of Konaha,* 131 F2d 737, 738 (7th Cir 1942).

*See also* Act of July 22, 1790, ch 33, 1 Stat 137; Act of May 19, 1796, ch 30, 1 Stat 469; Act of March 3, 1817, ch 93, 3 Stat 383, Assimilative Crimes Act of June 25, 1948, ch 645, 62 Stat 686 (*codified in* 18 USC § 13); Act of June 25, 1948, ch 645, 62 Stat 757 (*codified in* 18 USC §§ 1152, 1153); Act of May 24, 1949, ch 139, § 26, 63 Stat 94; Act of November 2, 1966, Pub L 89-707, § 1, 80 Stat 1100; and Act of April 11, 1968, Pub L 90-284, title V, § 501, 82 Stat 80 (*all codified in* 18 USC § 1153).

*See also* U.S. Dept. of the Interior, Federal Indian Law 94 (1958); Vollmann, *Criminal Jurisdiction in Indian Country: Tribal Sovereignty & Defendants' Rights in Conflict,* 22 Kan L Rev 387 (1974); Case note, *Red, White, and Gray: Equal Protection and the American Indian,* 21 Stan L Rev 1236 (1969); Davis, *Criminal Jurisdiction Over Indian Country in Arizona,* 1 Ariz L Rev 62 (1959); Comment, *The "Right of Tribal Self-Government" and Jurisdiction of Indian Affairs,* 1970 Utah L Rev 291.

[5] Act of August 15, 1953, ch 505, 67 Stat 588-90 (*codified as amended in* scattered sections of 18, 28 USC).

[6] *See* S. Rep. No. 699, 83d Congress, 1st Sess 5 reprinted in [1953] 2 U.S. Code Cong. & Adm. News 2409. *See also* Goldberg, *Public Law 280: The Limits of State Jurisdiction Over Reservation Indians,* 22 UCLA L Rev 535, 540 (1975).

ernment and its Bureau of Indian Affairs is more understanding of their problems than are the various states.[7] The important fact is that crimes by Indians on the Warm Springs Reservation are expressly excluded from the provisions of Public Laws 280 in conferring upon Oregon jurisdiction over crimes by other Indians on other Indian reservations.[8]

It follows, in our opinion, that the State of Oregon had no jurisdiction in this case. In so holding, we do not overlook the contention by the state that it has jurisdiction to try an offense where *only part* of that offense has been committed within its boundaries; that the crime of "escape" does not require that the act of escape be done or completed at the physical location of the jail, as in the case of a prisoner who escapes while on a work release program; and that a prisoner is considered to be confined within a "correctional facility" from the time of his original commitment until his lawful discharge.[9]

The Court of Appeals appeared to reject these contentions, and properly so, in our opinion, under the facts of this case. We do not necessarily disagree with such contentions or with the underlying assumption that the crime of escape may be a continuing crime, depending upon the facts. According to the record in this case, however, the conduct of this defendant in escaping from the custody of the officer occurred solely and entirely upon the Warm Springs Indian Reservation. Although that reservation is located in part in Jefferson County, it is also located in part in Wasco County and borders on other counties. The information charged that defendant "in Jefferson County * * * did unlawfully and knowingly escape from

---

[7] *See* Goldberg, supra, note 6 at 545.

[8] The Court of Appeals held, in effect, that because escape from state custody is not a matter of "special federal concern" the state has jurisdiction in this case despite the express exemption for crimes by Indians on the Warm Springs Reservation, as provided by Public Law 280. We do not agree.

[9] *See* Commentary to the Oregon Criminal Code 94 (1975).

custody * * * having been incarcerated and being an inmate of * * * Jefferson County Jail * * *."

The only evidence of record is that defendant "escaped" from custody on the Warm Springs Indian Reservation. There was no evidence that in the course of his escape defendant went upon any portion of Jefferson County except that portion on which the Warm Springs Indian Reservation is located. Under this evidence, we hold that the State of Oregon had no jurisdiction to prosecute, try and convict this defendant.

It does not necessarily follow that the State of Oregon has no remedy in this case. By the terms of the Act of June 25, 1948 (18 USC 1152), it is provided that when, by reason of the provisions of Public Law 280, a state has no jurisdiction over some crimes by an Indian on an Indian reservation in violation of state law, the federal courts have jurisdiction in such cases for the prosecution of such crimes, with some exceptions. Also, under the terms of that statute, tribal courts have jurisdiction in cases involving some crimes and it appears from the record that the Warm Springs Tribe has adopted a tribal ordinance on the subject of escape.[10]

We need not decide whether any of such remedies would be available in this case because those issues are not presented for decision by this court. We hold, however, that the trial court erred in overruling defendant's motions challenging the jurisdiction of the state court in this case and that the Court of Appeals erred in affirming defendant's conviction.

Reversed and remanded.

[10] *See also* Assimilative Crimes Act of June 25, 1948, ch 645, 62 Stat 686 (*codified in* 18 USC § 13); and *Williams v. United States,* 327 US 711 (1946). *See also* United States v. Sosseur, 181 F2d 873 (7th Cir 1950).

It should also be noted "major crimes" (which do not include the crime of escape) are subject to the provisions of separate statutes, the Act of June 25, 1948, ch 645, 62 Stat 758; Act of May 24, 1949, ch 139, § 26, 63 Stat 94; Act of November 2, 1966, Pub L 89-707, § 1, 80 Stat 1100; Act of April 11, 1968, Pub L 80-284, title V, § 501, 82 Stat 80 (*codified in* 18 USC § 1153).