Argued and submitted March 15, reversed and remanded with instructions
August 28, 1996

## NORTH PACIFIC INSURANCE COMPANY,
an Oregon corporation,
*Respondent,*

*v.*

## Cindy SWITZLER,
in her representative capacity
as Guardian Ad Litem for
Keegan Kalama, a minor,
*Respondent,*

*and*

## Angelina DeLaTORRE,
conservator and guardian ad litem
for Joaquin MacNeil, a minor;
Andrea and Gilbert Kalama,
conservators and guardians ad litem
for Gilbert Kalama, Jr.; and
Celeste Whitewolf, estate administrator
for the Estate of Rupert Kalama, deceased,
*Appellants.*

(9306-03899; CA A84345)

924 P2d 839

Kathryn H. Clarke argued the cause and filed the briefs for appellants.

Thomas W. Brown argued the cause for respondent North Pacific Insurance Company. With him on the brief was Cosgrave, Vergeer & Kester.

No appearance for respondent Cindy Switzler.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendants appeal from a declaratory judgment in plaintiff's favor, ORS 28.010, challenging the trial court's subject matter and personal jurisdiction. We reverse.

Defendants are three Native American youths who were involved in a single-car accident on the Warm Springs Indian Reservation. Plaintiff is an insurance company that had issued a liability policy to the grandparents of the vehicle's driver. Defendants claimed that the driver was covered under the policy, but plaintiff disagreed.

The accident occurred on June 26, 1990. Keegan Kalama, a minor, was driving his father's pickup truck on the reservation when it overturned. In the truck were passengers Joaquin MacNeil, Gilbert Kalama and Rupert Kalama, all minors. Joaquin and Gilbert were injured and Rupert was killed. At the time of the accident, Rupert and Gilbert were Warm Springs members living on the reservation. Joaquin was a Colorado resident visiting the reservation. Keegan was also a Warm Springs member, but he lived off the reservation on a 10-acre parcel in Sandy, Oregon. On that parcel were a trailer where Keegan lived with his mother, Cindy Switzler, as well as a house occupied by Jerry Lawson Sr., and his wife, Doris Lawson. The Lawsons are Switzler's parents and Keegan's grandparents.

Before the accident, the Lawsons had purchased an insurance policy from plaintiff in Portland, where plaintiff's headquarters are located. The policy provided liability coverage for any "family member" of the insured, which the policy defined as "a person related to you by blood, marriage or adoption who is a resident of your household."

On June 26, 1992, Joaquin, Gilbert and Rupert's estate filed a negligence action against Keegan in Warm Springs tribal court. Switzler, Keegan's mother, was eventually appointed his guardian *ad litem*. On June 15, 1993, plaintiff filed this declaratory action against Keegan in state court, seeking a declaration that Keegan was not covered under the Lawson policy. Joaquin, Gilbert and Rupert's estate then filed a separate declaratory action in tribal court, arguing that Keegan was covered. In the state court action,

Keegan then moved under ORCP 29 A to compel joinder of Joaquin, Gilbert and Rupert's estate, all of whom opposed the joinder and moved to dismiss on the grounds that the court lacked subject matter and personal jurisdiction. The trial court allowed Keegan's motion and also granted plaintiff summary judgment, ruling that the policy did not cover Keegan. Only defendants Joaquin, Gilbert and Rupert's estate appealed.[1]

 We first address defendants' contention that the trial court lacked subject matter jurisdiction by virtue of Gilbert and Rupert's status as Warm Springs members living on the reservation.[2] Although Native American tribes retain attributes of sovereignty, the United States Supreme Court long ago departed from the notion that state laws have no force within reservation boundaries. *White Mountain Apache Tribe v. Bracker*, 448 US 136, 141-42, 100 S Ct 2578, 65 L Ed 2d 665 (1980). Nonetheless, Congress's power over tribal affairs under the Indian Commerce Clause[3] and the semi-independent status of the tribes themselves give rise to two independent barriers to the assertion of state authority over tribal members and their reservations. First, federal law may pre-empt the exercise of state authority. *Id.* Second, that authority may unlawfully infringe " 'on the right of reservation Indians to make their own laws and be ruled by them.' " *Id., quoting Williams v. Lee*, 358 US 217, 220, 79 S Ct 269, 3 L Ed 2d 251 (1959). These barriers are independent in the sense that either, standing alone, can prevent a state from exerting authority over tribal members or their land. 448 US at 143.

We first consider whether federal law pre-empts the exercise of subject matter jurisdiction. 28 USC § 1360(a)

---

[1] Because Switzler, as guardian for Keegan, is not a party to this appeal, "defendants" refers only to Joaquin, Gilbert and Rupert's estate.

[2] At the joinder hearing, defendants appeared to withdraw their challenge to subject matter jurisdiction and to focus solely on personal jurisdiction. However, we must always consider whether we have subject matter jurisdiction, which can be raised at any time. *Trout v. Umatilla Co. School Dist.*, 77 Or App 95, 98 n 2, 712 P2d 814 (1985), *rev den* 300 Or 704 (1986).

[3] Article I, section 8, of the United States Constitution provides, in part:

"The Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]"

grants Oregon state courts jurisdiction over civil actions "to which Indians are parties which arise in the areas of Indian country" in Oregon, "except the Warm Springs Reservation." Defendants contend that the federal statute bars state jurisdiction over *any* civil action involving Warm Springs members domiciled on the reservation, regardless of where it arose. Plaintiff argues that jurisdiction is pre-empted only in actions arising on the Warm Springs Reservation. We are aware of no Oregon or U.S. Supreme Court cases resolving this question. However, the statute's plain language does not support defendants' position.

When the resolution of a question of federal law turns on a statute and the intention of Congress, courts first look to the statutory language and then to the legislative history if that language is unclear. *Blum v. Stenson*, 465 US 886, 896, 104 S Ct 1541, 79 L Ed 2d 891 (1984).[4] 28 USC § 1360(a) provides, in part:

> "Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian Country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State[.]"

In the referenced table, listed opposite "Oregon" are the words "All Indian country within the State, except the Warm Springs Reservation." Inserting that language into the operative text, the statute reads:

> "Oregon shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in all Indian country within Oregon, except the Warm Springs Reservation."

We conclude from that language that Congress intended to grant Oregon subject matter jurisdiction over all civil cases

---

[4] Because this is a federal statute, we follow the United States Supreme Court's rules of statutory construction.

that (1) involve Native Americans as parties and (2) arise in the areas of Indian Country within the state's boundaries, except those cases arising on the Warm Springs Reservation. The phrase "except the Warm Springs Reservation" modifies the words "Indian country within Oregon," and thus represents a geographic limit to the exemption from jurisdiction. It is therefore not merely a party's status as a Warm Springs member that determines jurisdiction, but also *where* the action arose.

This is consistent with our interpretation of Congress's parallel grant of criminal jurisdiction in 18 USC § 1162(a), which was passed as part of the civil jurisdiction statute, Public Law 280. *Three Affiliated Tribes v. Wold Engineering*, 467 US 138, 143, 104 S Ct 2267, 81 L Ed 2d 113 (1984); *Bryan v. Itasca County*, 426 US 373, 377-81, 96 S Ct 2102, 48 L Ed 2d 710 (1976); *Williams*, 358 US at 221 n 6. 18 USC § 1162(a) provides, in part:

> "Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory[.]
>
> "* * * * *
>
> "Oregon ............ All Indian country within the State, except the Warm Springs Reservation."

Under that statute, we have held that Oregon has no jurisdiction over crimes committed by Native Americans on the Warm Springs Reservation, but does have jurisdiction over such crimes committed *off the reservation. State v. McGill*, 115 Or App 122, 124, 836 P2d 1371 (1992); *see also State v. Smith*, 277 Or 251, 560 P2d 1066 (1977) (same); *Mescalero Apache Tribe v. Jones*, 411 US 145, 148-49, 93 S Ct 1267, 36 L Ed 2d 114 (1973) ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state laws otherwise applicable to all citizens of the State.").

We conclude that 28 USC § 1360(a) does not preempt the state's exercise of subject matter jurisdiction over civil actions arising *off* the Warm Springs Reservation, even

though Warm Springs members residing on the reservation are parties.[5] The question now before us is whether the declaratory action arose on or off the Warm Springs Reservation.

 A declaratory action does not accrue unless and until a justiciable controversy exists. *State Farm Fire & Cas. v. Reuter*, 294 Or 446, 449, 657 P2d 1231 (1983); *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982). Here, a justiciable controversy arose at the time of the on-reservation automobile accident. *See Reuter*, 294 Or at 453 (justiciable controversy exists between insurer and insured because of third party's pending personal injury case). Although that tells us *when* the action accrued, it does not tell us *where* it arose.

In *Foundation Reserve Ins. Co., Inc. v. Garcia*, 105 NM 514, 734 P2d 754 (1987), the New Mexico Supreme Court held that a declaratory action arose off the reservation, even

---

[5] In arguing to the contrary, defendants rely primarily on *United States v. E.K.*, 471 F Supp 924 (D Or 1979), and *United States v. Juvenile Male*, 864 F2d 641 (9th Cir 1988). Neither of these cases supports defendants' interpretation. In *E.K.*, the district court held:

"Congress * * * has specifically exempted from any grant of jurisdiction that geographical area in the State of Oregon lying within the Warm Springs Reservation. * * * Thus the juvenile court of the State of Oregon does not have jurisdiction over any juvenile proceeding to which a Warm Springs Indian, domiciled upon the reservation, is a party." 471 F Supp at 928 (footnote omitted).

In *Juvenile Male*, the Ninth Circuit panel held:

"The state of Oregon, where the Warm Springs Reservation is located, has no jurisdictional authority over appellant as he is a member of the Warm Springs Tribe and resides on the reservation." 864 F2d at 644, citing *E.K.*

Both cases involved acts committed by juvenile Native Americans that, if committed by adults, would constitute crimes. Defendants argue that neither case regarded the location of the offense, either on or off the reservation, as critical or relevant. We disagree. Although the court in *E.K.* did not explicitly base its holding on the location of the offense, it referred throughout that discussion to "a civil proceeding *arising on the Warm Springs Reservation*," 471 F Supp at 927, "jurisdiction over the conduct between and among Indians *within Indian country*," *Id.*, and "jurisdiction over the person of a Warm Springs Indian for any civil or criminal matter *arising upon the Warm Springs Reservation*." *Id.* at 928 (emphases supplied). Similarly in *Juvenile Male*, the court referred to the juvenile's "assault against another Indian *within Indian country*," 864 F2d at 643, and stated that an "Indian who commits one of a certain list of major crimes (including assault) against another Indian *on an Indian reservation* is subject to federal jurisdiction." *Id.* (emphases supplied).

though it was precipitated by an on-reservation accident and the insured was a Native American residing on the reservation. 734 P2d at 755. The court reasoned that the "dispute involves the determination of obligations arising from the insurance agreement that was entered into in Espanola, New Mexico," outside the reservation's boundaries. *Id*. For the following reasons, we agree with that analysis.

Under Oregon law, a party bringing an action for declaratory relief seeks a declaration of "rights, status and other legal relations." ORS 28.010. Here, as in *Foundation Reserve*, plaintiff insurance company seeks a declaration of its obligations *under the Lawson insurance policy*. Therefore, although the action *accrued* with the occurrence of on-reservation events, it *arose* out of the policy itself. Because that policy was purchased off-reservation by non-Native Americans living in Oregon, from an insurance company headquartered in Portland, the action arose off the reservation.[6] Accordingly, 28 USC § 1360(a) does not pre-empt the state court's exercise of subject matter jurisdiction.

■ We next examine whether that jurisdiction unlawfully infringes on tribal sovereignty under the second barrier set out in *White Mountain Apache Tribe*, 448 US at 142.

"Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Williams*, 358 US at 220.

In *Williams*, a non-Indian sued a Navajo in Arizona court for debts incurred on the Navajo reservation. Noting that no federal act had given Arizona jurisdiction over such actions and that the Navajo Tribe recently had "greatly improved its

---

[6] Defendants assert the contrary, citing *Crawford v. Genuine Parts Co. Inc.*, 947 F2d 1405 (9th Cir 1991), *cert den* 502 US 1096 (1992), in which the court stated:

"Lawsuits springing from on-reservation automobile accidents have often been considered to arise on the reservation, at least when members of the tribe are involved in the litigation." *Id*. at 1408.

But *Crawford* was a products liability case, not an action for declaratory judgment. No one disputes that defendants' *negligence* action against Keegan stemmed directly from the auto accident and therefore arose on the reservation. An action for declaratory judgment, however, flows directly from the rights and obligations inherent in the insurance policy, not from the accident precipitating the controversy.

legal system," the Supreme Court concluded that the exercise of state jurisdiction "would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Id.* at 222-23. The plaintiff's status as a non-Indian was immaterial, the Court reasoned, because he "was on the Reservation and the transaction with an Indian took place there." *Id.* at 223.

In *Fisher v. District Court*, 424 US 382, 96 S Ct 943, 47 L Ed 2d 106 (1976), the Court held that a Montana state court adoption proceeding, involving only members of the Northern Cheyenne Tribe, interfered with the tribe's powers of self-government because it "would subject a dispute arising on the reservation among reservation Indians to a forum other than the one they have established for themselves." 424 US at 387-88.[7]

Unlike in *Fisher*, not all of the parties to this action are Warm Springs members, and unlike in *Williams*, the action did not arise on the reservation. Although the automobile accident occurred on the reservation and the underlying negligence claim arose there, the trial court did not assert jurisdiction over that case. This is an action for declaratory relief, which we have already characterized as arising *off* the reservation. Accordingly, there is no infringement on the tribes' right to be ruled by their own laws. We hold that the trial court had subject matter jurisdiction and properly denied defendants' motion to dismiss on that basis.

Defendants also challenge the trial court's personal jurisdiction over Joaquin, Gilbert and Rupert, who lived in Colorado and on the Warm Springs Reservation, respectively. No one disputes the court's personal jurisdiction over Keegan, a Warm Springs member living *off* the reservation in Oregon.

---

[7] In *Three Affiliated Tribes*, the tribes themselves filed a negligence and breach of contract action in North Dakota state court against a non-Indian corporation. The Court found no infringement, holding that "tribal self-government is not impeded when a State allows an Indian to enter its courts on equal terms with other persons to seek relief against a non-Indian concerning a claim arising in Indian country." 467 US at 148-49.

■ ■ Although subject matter jurisdiction addresses the court's authority over the general subject involved, *Greeninger v. Cromwell*, 127 Or App 435, 438, 873 P2d 377 (1994),[8] personal jurisdiction is the court's authority over a particular person. Personal jurisdiction has two components: (1) power over the parties and (2) notice of the pending dispute and the opportunity to be heard. *Thoenes v. Tatro*, 270 Or 775, 786, 529 P2d 912 (1974). These are addressed in ORCP 4 and 7, respectively. Defendants here contest the trial court's power over them as parties.

ORCP 4 provides, in part:

> "A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances: * * *[.]"

The rule then lists numerous situations in which a party has some connection with Oregon. ORCP 4 A-L.

■ ■ Plaintiff first argues that, because the action arose off the reservation,[9] the trial court had personal jurisdiction over Gilbert and Rupert as "natural person[s] domiciled within this state[.]" ORCP 4 A(2). We disagree. The ORCP do not define "domicile." Generally, however, a person is domiciled where she (a) resides and (b) intends to remain permanently, to the exclusion of a domicile elsewhere. *Pirouzkar v. Pirouzkar*, 51 Or App 519, 523, 626 P2d 380 (1981); *Doyle v. Doyle*, 17 Or App 529, 531, 522 P2d 906 (1974). Although the Warm Springs Reservation is located within the exterior boundaries of Oregon, tribal members living on the reservation do not "reside" in Oregon.

---

[8] Subject matter jurisdiction exists when the constitution, the legislature or the law has directed a specific court to do something about a specific kind of dispute. State circuit courts have subject matter jurisdiction over all actions unless a statute or rule of law divests them of jurisdiction. Or Const, Art VII, § 9; Or Const, Art VII (Amended), § 2; *Greeninger*, 127 Or App at 438.

[9] Plaintiff apparently concedes that in actions arising *on* the reservation, state courts lack personal jurisdiction over Native Americans who reside there. By making the situs of the action dispositive, plaintiff effectively eliminates any distinction between personal and subject matter jurisdiction.

"Under federal Indian law, the Warm Springs tribes, like other federally recognized tribes, are a distinct community. Although their reservation is within the exterior boundaries of Oregon, *it is not fully part of the state*. The tribes occupy their own territory, within particular boundaries, in which the laws of Oregon have no force, and into which the citizens of Oregon have no right to enter, except with the assent of the Indians themselves, or in conformity with treaties and acts of Congress. *See McClanahan v. Arizona Tax Comm'n*, 411 US 164, 168-69, 93 S Ct 1257, 36 L Ed 2d 129 (1973). Indian tribes were once fully sovereign, and they still retain a semi-sovereignty." *Warm Springs Forest Products Ind. v. EBI Co.*, 74 Or App 422, 433, 703 P2d 1008 (1985) (Rossman, J., dissenting), *aff'd* 300 Or 617, 716 P2d 740 (1986) (emphasis supplied).

Warm Springs members living on the reservation reside on their own semi-sovereign territory within the state. Although not the equivalent of a separate state, *White Mountain Apache Tribe v. Bracker*, 448 US at 143, the Warm Springs reservation is nonetheless a "distinct community" that is "not fully part of" Oregon. 74 Or App at 433. For personal jurisdiction purposes, inhabitants of the Warm Springs reservation therefore do not "reside" in Oregon, and ORCP 4 A(2) does not apply.[10] Based on the tribes' semi-sovereign status, we instead treat their members as out-of-state residents and apply the long-arm provisions of ORCP 4.

"Utilization of a long-arm provision is particularly appropriate because its use normally depends on the state court having subject matter jurisdiction, avoids imposition of state court jurisdiction over reservation-based activity, and minimizes intrusions on tribal sovereignty." *Dixon v. Picopa Construction Co.*, 160 Ariz 251, 772 P2d 1104, 1113 (1989), *citing* Canby, *Civil Jurisdiction and the Indian Reservation*, 1973 Utah L Rev 206, 226.

---

[10] As support for its position that Warm Springs Indians are Oregonians, plaintiff cites *State v. Jim*, 81 Or App 177, 186-87, 725 P2d 365 (1986) (Rossman, J., specially concurring), *rev den* 302 Or 571 (1987) ("In a sense, [Indians] have a triple citizenship, members of the tribe, citizens of their state and citizens of the United States."). However, even assuming Warm Springs members bear some vestige of Oregon citizenship, they do not necessarily "reside" within the state for purposes of ORCP 4 A(2).

■ Under ORCP 4, the state's exercise of personal jurisdiction over an out-of-state defendant is either "general," "specific" or conferred under the "catchall" due process provision. *State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 154-56, 854 P2d 461 (1993). General personal jurisdiction is governed by ORCP 4 A(4), which provides:

> "A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:

> "In any action, whether arising within or without this state, against a defendant who when the action is commenced:

> "* * * * *

> "Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise[.]"

Here, there is no evidence in the record that Gilbert or Rupert engaged in *any* off-reservation activities in Oregon. Defendant Joaquin, the Colorado resident visiting Warm Springs, arguably passed through Oregon to reach the reservation. However, merely passing through does not constitute "substantial and not isolated activities within this state." Therefore, on this record, there was no general personal jurisdiction over defendants under ORCP 4 A(4).

■ Specific personal jurisdiction, governed by ORCP 4 C-K, is based on a "'relationship between the state and the subject matter of the particular litigation. Jurisdiction [under those subsections] exists only if the action "arises out of" defined activities by the defendant.'" *Circus Circus*, 317 Or at 155 n 1, *quoting* Merrill, *Jurisdiction and Summons in Oregon* 2 (1986). ORCP 4 B deals with statutes specifically conferring grounds for personal jurisdiction. Defendants argue that none of the specific provisions of ORCP 4 B-K applies, and plaintiff does not contend otherwise. We agree.

■ If ORCP 4 A-K are inapplicable, courts consider whether jurisdiction lies under ORCP 4 L, the "catchall" provision. 317 Or at 156. ORCP 4 L provides for personal jurisdiction

"in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

In determining jurisdiction under ORCP 4 L, Oregon courts follow United States Supreme Court decisions governing the constitutionality of jurisdiction under the Due Process Clause of the Fourteenth Amendment. *Circus Circus*, 317 Or at 156. Under those cases, Oregon may constitutionally exercise personal jurisdiction over a nonresident defendant who has "minimum contacts" with the state. "Minimum contacts" means the defendant has "purposefully directed" his or her activities at state residents and that the litigation "arises out of or relates to" those activities. Even where minimum contacts exist, however, the exercise of jurisdiction still must be reasonable, *i.e.*, it must comport with "fair play and substantial justice" under various factors. 317 Or at 159-60.

■ No defendant here had "minimum contacts" with Oregon sufficient to sustain jurisdiction under ORCP 4 L. Although the declaratory action arose in Oregon due to the purchase of the insurance policy in Portland, defendants were not parties to that contract. Their only connection to the policy was their claim against it, but that was part of the negligence action filed in *tribal* court.[11] As noted above, there is no evidence that Gilbert or Rupert engaged in *any* off-reservation conduct.[12] As to Joaquin, passing through the state on his way to visit Warm Springs does not constitute a "purposeful direction" of his activities at Oregon residents. Even if it

---

[11] *Cf. Warm Springs Forest Products*, 74 Or App at 426 n 4 (Warm Springs Tribes consented to personal jurisdiction by filing action in *state* court).

[12] Plaintiff's reliance on cases such as *McGill* and *Foundation Reserve* is therefore misplaced. In *McGill*, we held that a state court had jurisdiction to criminally prosecute a Warm Springs member because his crime occurred off the reservation. 115 Or App at 124-25; 18 USC § 1162(a). In *Foundation Reserve*, the New Mexico Supreme Court stated: "When the cause of action arises off the reservation, a state court can obtain jurisdiction over Indians who reside on an Indian reservation." The court there held that a declaratory judgment action, stemming from an on-reservation auto accident, arose off the reservation because the policy was purchased off the reservation. 734 P2d at 755. In both cases, the Native American parties engaged in off-reservation conduct—either criminal or contractual—sufficient to establish a connection with the forum state. Because Gilbert and Rupert engaged in no off-reservation conduct, those cases are distinguishable.

did, the litigation did not "arise out of or relate to" that conduct. The trial court therefore lacked personal jurisdiction over defendants Joaquin, Gilbert and Rupert.

 We next determine what effect the lack of personal jurisdiction had on the judgment for declaratory relief.[13] ORS 28.110 provides, in part:

> "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

Under that language, "all affected interests" must be joined as a jurisdictional prerequisite to entering a declaratory judgment. *Wright v. Hazen Investments, Inc.*, 293 Or 259, 264, 648 P2d 360 (1982). Failure to join a "necessary party"— *i.e.*, a party with an affected interest—deprives the court of authority to enter a judgment that is binding on that party. *Futrell v. Wagner*, 96 Or App 27, 32, 771 P2d 292, *rev den* 308 Or 158 (1989). If a necessary party cannot be joined, the declaratory action must be dismissed. *Id.* at 33. In *Farmers Ins. Co. v. Stockton*, 112 Or App 120, 827 P2d 938 (1992), we held that an accident victim making a claim against a third party's insurance policy was a "necessary party" to a declaratory action addressing whether the driver was covered by that policy. 112 Or App at 126.

Here, defendants Joaquin, Gilbert and Rupert's estate, as accident victims and claimants to the Lawson policy, are "necessary" to the declaratory action under ORS 28.110. 112 Or App at 126. Because the lack of personal jurisdiction prevents the court from joining them, the declaratory judgment suffers from a jurisdictional defect and the action must be dismissed.[14] *Wright*, 293 Or at 264; *Futrell*, 96 Or App at 32-33.

Reversed and remanded with instructions to vacate declaratory judgement and enter order to dismiss.

---

[13] Plaintiff argues that we should remand to the trial court for a determination whether defendants are "indispensable" parties under ORCP 29 B. Because ORS 28.110 resolves this issue as a jurisdictional matter, remand is unnecessary.

[14] Because our decision rests on jurisdictional grounds, we do not reach defendants' assignment of error relating to comity.