Submitted on record and briefs August 31, 2004, conviction for second-degree escape reversed; remanded for entry of judgment of conviction for third-degree escape March 2, 2005

## STATE OF OREGON,
*Respondent,*

*v.*

## ISSAC JEROME LANE,
*Appellant.*

### 02FE0143; A119122

108 P3d 20

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Walter J. Ledesma, Deputy Public Defender, Office of Public Defense Services filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Brendan C. Dunn, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Leeson, Judge pro tempore.

LEESON, J. pro tempore.

**LEESON, J. pro tempore**

Defendant appeals from his conviction for escape in the second degree. ORS 162.155. He contends that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence that he escaped from a correctional facility. In the alternative, he argues that there was insufficient evidence that he knowingly escaped from a correctional facility. For the reasons that follow, we reverse defendant's conviction for second-degree escape and remand for entry of a judgment of conviction for third-degree escape, ORS 162.145(1).

In reviewing the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the state, accepting reasonable inferences and credibility choices that the factfinder could have made, *State v. Presley*, 175 Or App 439, 443, 28 P3d 1238 (2001), to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, *State v. Goddard*, 178 Or App 538, 541, 37 P3d 1046, *rev den*, 334 Or 121 (2002).

Defendant and three others were arrested for burglary and placed in the Crook County Jail. On March 21, 2002, defendant signed a third-party release agreement, under which he agreed to contact his defense counsel immediately and to remain in regular contact with that counsel. Two months later, defendant's counsel moved to withdraw, citing defendant's failure to contact him or to respond to counsel's efforts to contact defendant.

On May 30, 2002, defendant, along with two codefendants who had not been released from custody, attended a status hearing before Judge Thompson on the burglary charges. A deputy sheriff from the Crook County Jail accompanied the codefendants and remained in the courtroom at the judge's request. At the outset of the hearing, the state moved to revoke defendant's release based on defense counsel's affidavit that defendant had violated the terms of the March 21 release agreement. Judge Thompson allowed the

motion. Judge Thompson then signed the order in defendant's presence,[1] told defendant that he had revoked defendant's release, and remanded him to custody. At least two more times during the hearing Judge Thompson told defendant that he had been "reduced to custody." The deputy sheriff who was in the courtroom did not place defendant in restraints or tell him that he was to sit with the other inmates in the courtroom, although that is the regular practice of Crook County Jail officials when a judge tells a defendant that he or she is remanded to the custody of the sheriff.

As Judge Thompson and counsel were concluding their discussion about when and how trial should proceed against defendant and his codefendants on the burglary charges, defendant fled the courtroom. As defendant was fleeing, Judge Thompson called out to him that he had been reduced to custody and must return. A police officer apprehended defendant several blocks from the courthouse a few minutes later.

Defendant was charged with escape in the second degree, ORS 162.155, for escape from the Crook County Jail—a correctional facility—and escape in the third degree, ORS 162.145, for escape from custody. ORS 162.155(1)(c) provides, "A person commits the crime of escape in the second degree if [t]he person escapes from a correctional facility[.]" Defendant waived his right to a jury trial. The court found that defendant was in the constructive custody of the Crook County Jail when he fled from the courtroom. The court reasoned:

"The Court believes based on Judge Thompson's clear language that he intended you not to be free to go and, therefore, he was establishing the courthouse as a place to confine you while you were charged with the crime.

"* * * * *

"The Court would also note for the record[,] and my finding [is,] that at the time Judge Thompson had remanded you to custody, there was a correction official from the jail

---

[1] We take judicial notice of the order that Judge Thompson signed during the proceedings of May 30, 2002, in *State v. Lane,* Crook County Circuit Court, number 01FE0275.

present in the courtroom with other inmates and that constructive custody could be clearly established based on the officer's presence. Where you were standing when he remanded you to custody, it was in courtroom A, is exactly where the inmates that are in custody stand, the correction official stays in the same place that he was standing on that date."

The court then found defendant guilty of second-degree escape and dismissed the charge of third-degree escape.

■ On appeal, defendant concedes that he is guilty of third-degree escape.[2] However, he contends that the trial court erred in denying his motion for judgment of acquittal on the charge of second-degree escape from a correctional facility. According to defendant, when Judge Thompson remanded him to custody during the pretrial hearing, he was "not confined in the sense that ORS 162.135(2) contemplates," and the judge's statement that he was "reduced to custody" meant only that defendant would be committed to the county jail for confinement at some later time. Defendant contends that Judge Thompson's failure to put him in the "penalty box" with the other inmates, to order him placed in handcuffs, or to declare the courtroom a correctional facility means that he was merely in "custody," not in the constructive custody of a correctional facility. The state responds that the trial court's unchallenged findings support its determination that defendant escaped from a correctional facility.

This court has held that inmates can be in the constructive custody of a correctional facility even though they are not physically inside the correctional facility. *State v. Sasser*, 104 Or App 251, 254, 799 P2d 1146 (1990), *rev den*, 311 Or 151 (1991). Defendant does not dispute that general proposition or that a courthouse may be treated as a correctional facility. *State v. Schaffer*, 124 Or App 271, 274, 862 P2d 107 (1993), *rev den*, 318 Or 479 (1994). Defendant contends that the record does not establish that he was an inmate when he fled from the courtroom and, therefore, that he could

---

[2] ORS 162.145 provides that a person commits the crime of third-degree escape if the person "escapes from custody."

not have been found to be in the constructive custody of a correctional facility. However, defendant makes a second argument, the resolution of which makes it unnecessary to decide whether, on the facts of this case, the courtroom was a "correctional facility."

Defendant contends that, even assuming that he did escape from a correctional facility, the state failed to prove beyond a reasonable doubt that he "knowingly" did so. According to defendant, the court's failure to declare the courtroom a correctional facility or to process defendant as if he had been reduced to the custody of a correctional facility means that a factfinder could not find beyond a reasonable doubt that defendant knew that he was escaping from a correctional facility. The state responds that it put on no evidence that defendant knew he was escaping from a correctional facility because it was not required to establish that defendant "knowingly escaped" from a correctional facility. In the alternative, the state contends that the legal status of the location from which defendant escaped was merely an "attendant circumstance" of the underlying criminal conduct of escape.

Generally, to be guilty of a crime, a person must act with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state. ORS 161.095(2). ORS 162.155(1)(c) does not specify a culpable mental state for the crime of second-degree escape from a correctional facility. However, for those statutes defining an offense without prescribing the culpable mental state, the general rule is that "culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence." ORS 161.115(2); *see also State v. Cho*, 297 Or 195, 199-201, 681 P2d 1152 (1984) (heightened impact on liberty interest of the alleged misdemeanant or felon provides support for culpability requirement in crimes). In this case, the indictment charged defendant with "knowingly" escaping from a correctional facility.

The state relies on ORS 161.115(4) for the argument that, notwithstanding the requirement of ORS 161.115(2), it

did not have to prove that defendant knew that he was escaping from a correctional facility. Subsection (4) provides:

> "Knowledge that conduct constitutes an offense, or knowledge of the existence, meaning or application of the statute defining an offense, is not an element of an offense unless the statute clearly so provides."

According to the state, that subsection disposes of defendant's argument because it means that "the state must prove that a defendant is aware that a particular statutory definition applies to his conduct only if the statute defining the offense at issue clearly requires the state to prove that knowledge." We disagree. This court has explained that ORS 161.115(4) forbids "implying a requirement of knowledge of the law as one of the elements of the crime. As such it is a legislative restatement of the rule that everyone is presumed to know the law." *State v. Yancey*, 32 Or App 477, 480 n 2, 574 P2d 358 (1978). The general proposition that everyone is presumed to know the law does not relieve the state of the requirement in ORS 161.115(2) that it prove that a defendant acted with the requisite culpable mental state. The state's reliance on ORS 161.115(4) does not resolve the issue here, which is whether the state was required to prove that defendant knew of a *fact*—namely, that he was escaping from a correctional facility.

In the alternative, the state contends, it did not have to prove that defendant knew or should have known that his escape would constitute escape from a correctional facility because the location of the offense was merely an "attendant circumstance" of the underlying criminal act of escape. In that respect, the state argues, this case is like *State v. Walker*, 140 Or App 472, 915 P2d 1039 (1996). In *Walker*, the defendant was charged with delivery of a controlled substance within 1,000 feet of a school, in violation of ORS 475.999. The defendant argued that the jury should have been instructed that it had to find that defendant knew of his proximity to a school because the state is required to prove a culpable mental state for each material element of an offense. We rejected the defendant's argument, holding that the location of the offense was not an act but an "attendant circumstance" of the underlying criminal conduct of delivery of a controlled substance. *Walker*, 140 Or App at 476-78.

Defendant counters that *Walker* is inapposite because that case involved an offense that was defined by a statute outside the Oregon Criminal Code. *See* ORS 161.105(1)(b) (offenses outside criminal code may indicate legislative intent to dispense with culpable mental state requirement for offense or material element thereof). Defendant points instead to our decision in *State v. Schodrow*, 187 Or App 224, 66 P3d 547 (2003), which the state does not address. In *Schodrow*, the defendant was convicted of unlawful possession of a firearm, ORS 166.250(1)(a), which provides that a person commits the crime of unlawful possession of a firearm if the person "knowingly [c]arries any firearm concealed upon the person[.]" The issue was whether only the act of carrying must be done knowingly or whether a defendant also must know the nature of what is being carried. We explained that the definition of "knowingly" in ORS 161.085(8) resolved any ambiguity in the statute with respect to the issue. That definition provides:

> " 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with *an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists.*"

(Emphasis added.) Applying the definition of "knowingly" to ORS 166.250(1)(a)—making it a crime knowingly to carry a firearm concealed on the person—we concluded that, "because carrying 'a firearm' is an aspect of the nature of the conduct or a circumstance described by the statute, a person must also be aware that the object he or she is carrying is a firearm." Concluding otherwise would effectively convert the crime into a strict liability offense. *Schodrow*, 187 Or App at 229-30.

The reasoning in *Schodrow* applies here. Defendant was charged with the Class C felony of knowingly escaping from a correctional facility, ORS 162.155(1)(c), (2). Escaping from a correctional facility is an aspect of the nature of the conduct described by that statute. By contrast, the nature of the conduct for third-degree escape, a Class A misdemeanor, is escaping from custody. As noted, although defendant concedes that he knew that he was in custody when he ran from

the courtroom and that he is guilty of third-degree escape, the state presented no evidence that defendant knew, or circumstances existed under which he can be held to have known, that he was escaping from a correctional facility when he fled from the courtroom.

Conviction for second-degree escape reversed; remanded for entry of judgment of conviction for third-degree escape.