Argued and submitted May 9, decision of Court of Appeals reversed; judgment of circuit court affirmed October 5, 2006

STATE OF OREGON,
*Petitioner on Review,*

*v.*

ISSAC JEROME LANE,
*Respondent on Review.*

(CC 02FE0143; CA A119122; SC S52697)

144 P3d 927

Jennifer S. Lloyd, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Rebecca A. Dunn, Chief Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Riggs,** Balmer, and Kistler, Justices.

BALMER, J.

---

** Riggs, J., retired September 30, 2006, and did not participate in the decision of this case.

**BALMER, J.**

Defendant fled from a courtroom after the trial court revoked his pretrial release status and remanded him to the custody of the sheriff for transportation to the county jail. As we discuss below, a person who unlawfully flees from "custody" commits the crime of third-degree escape, ORS 162.145(1), while a person who unlawfully flees from a "correctional facility" commits the crime of second-degree escape, ORS 162.155(1)(a). The state charged defendant with both second-degree escape and the less serious crime of third-degree escape in connection with the incident. Following a bench trial, the trial court convicted defendant of second-degree escape on the theory that the courtroom was a "correctional facility." The Court of Appeals reversed on a different theory, holding that the state had failed to prove that defendant had the requisite mental state to sustain a conviction for escape from a correctional facility. *State v. Lane*, 198 Or App 173, 108 P3d 20 (2005). We granted review and now reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

The facts are undisputed. The police arrested defendant and three others for burglary and placed them in the Crook County Jail. Defendant was released from jail pending trial when he signed a release agreement requiring that he remain in regular contact with his defense counsel. Defendant's counsel later moved to withdraw, however, because defendant had failed to remain in contact with him as required by the release agreement. Shortly thereafter, defendant appeared at a status hearing before Judge Thompson. Also present at the hearing were two codefendants, who continued to be held at the Crook County Jail. A deputy sheriff from the Crook County Jail escorted the codefendants to court and remained in the courtroom during the status hearing.

At the hearing, the state moved to revoke defendant's release agreement on the ground that he had violated the requirement that he remain in contact with his defense counsel. Judge Thompson allowed the motion, signed the order in defendant's presence, told defendant that he had

revoked defendant's release, and informed him that he had been "reduced to custody." Shortly thereafter, defendant left the courtroom by a side door. As defendant was leaving, Judge Thompson reminded him that he had been remanded to custody. Court staff notified the local police, and defendant was apprehended several blocks from the courthouse.

Defendant's indictment charged him with escape in the second degree, ORS 162.155, for escaping from a correctional facility, and escape in the third degree, ORS 162.145, for escaping from custody. Following a bench trial, the trial court found that defendant unlawfully had departed from a "correctional facility" when he left the courtroom after being "reduced to custody" by Judge Thompson. The trial court reasoned that, after Judge Thompson had revoked defendant's release and remanded him to custody, the courtroom was, in effect, a place of confinement for defendant. The trial court also noted that the presence of the deputy sheriff established that defendant was in the constructive custody of a correctional facility, as of the time that Judge Thompson had remanded him to custody. The court therefore found defendant guilty of second-degree escape and dismissed the charge of third-degree escape.

On appeal, the Court of Appeals held that, for the trial court to convict defendant of second-degree escape under ORS 162.155(1)(c), the state had to prove that defendant knew that he was escaping from a correctional facility. The Court of Appeals observed that "the state presented no evidence that defendant knew, or circumstances existed under which he can be held to have known, that he was escaping from a correctional facility when he fled from the courtroom." *Lane*, 198 Or App at 181. The Court of Appeals therefore reversed the conviction for second-degree escape and remanded the case for entry of judgment of conviction for third-degree escape.[1] The state sought review, which we granted.

---

[1] Defendant conceded that he was guilty of third-degree escape under ORS 162.145(1).

■        We first must determine whether, as the state argues, the courtroom qualified as a correctional facility for purposes of ORS 162.155(1)(c). If it did, we then must decide whether defendant possessed the requisite mental state to be convicted of second-degree escape under that statute.

ORS 162.155(1)(c) provides that "[a] person commits the crime of escape in the second degree if * * * [t]he person escapes from a correctional facility[.]" Other statutes define the key terms of ORS 162.155(1)(c). " 'Escape' means the unlawful departure of a person from custody or a correctional facility." ORS 162.135(5). " 'Correctional facility' means any place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order[.]" ORS 162.135(2).

Previously, this court has suggested that a prisoner serving a sentence may be within a correctional facility during a court appearance, if the prisoner came to the courtroom from prison and is returning to prison after that court appearance. In *State v. Palaia*, 289 Or 463, 468, 614 P2d 1120 (1980), the defendant was an inmate of a correctional facility, but escaped from custody before entering a vehicle to return to prison following a court appearance. The court stated in *dictum* that, "[u]nder the facts of this case, the defendant could * * * have been charged and convicted of escape from a correctional facility." 289 Or at 469 (citing *State v. Hutcheson*, 251 Or 589, 447 P2d 92 (1968), in which convicted prisoner escaped from work release program). The defendant in *Palaia* was a prisoner both before and after his court appearance, which made it easier for the court to suggest that his escape while temporarily outside the prison was from a correctional facility. By that reasoning, wherever the prisoner goes, even if it is outside the prison, the prisoner still is deemed to be in a correctional facility.

Similarly, in *State v. Smith*, 277 Or 251, 257, 560 P2d 1066 (1977), this court stated in *dictum*:

> "[T]he crime of 'escape' does not require that the act of escape be done or completed at the physical location of the jail, as in the case of a prisoner who escapes while on a work

release program; * * * a prisoner is considered to be confined within a 'correctional facility' from the time of his original commitment until his lawful discharge."[2]

Both *Palaia* and *Smith* suggest that, for purposes of the "escape" statutes, a courtroom can be considered a correctional facility when a convicted prisoner serving a sentence in a correctional facility is transported to a courtroom or place of work temporarily, with the expectation that the prisoner will be returned to the correctional facility after the court appearance.

In contrast, third-degree escape consists merely of escaping from custody. ORS 162.145(1) ("A person commits the crime of escape in the third degree if the person escapes from custody."); *see Palaia*, 289 Or at 469 ("Escape from custody, without more, supports a conviction only under ORS 162.145, escape in the third degree."). " 'Custody' means the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order[.]" ORS 162.135(4).

Defendant, while conceding that he committed third-degree escape, argues that he did not commit second-degree escape because the courtroom did not qualify as a correctional facility. Instead, he contends that he merely was in custody. The state counters that defendant was constructively in a correctional facility once the trial court revoked his conditional release. The state emphasizes that defendant earlier had been in jail and then had been conditionally released and that he was to be returned to jail following the trial court's revocation of his release. In those circumstances, the state argues, the trial court constructively had returned defendant to jail (although defendant was physically in the courtroom) as soon as the trial court had revoked his conditional release. The state further argues that the trial court, in revoking defendant's release, established the courtroom as a place of "confinement" of defendant—a person charged with a crime—and the courtroom therefore was a correctional facility, as that term is defined in ORS 162.135(2), quoted above.

---

[2] The legislature has specified that failing to return to a state Department of Corrections correctional facility from a work release program "[c]onstitutes an escape from a correctional facility under ORS 162.155." ORS 144.500(2)(b).

The first issue is whether a courtroom qualifies as a correctional facility for purposes of ORS 162.155(1)(c) when a judge orders that a defendant, who is present in the courtroom and had been on pretrial release, be remanded to the sheriff's custody, as the judge did here. For the reasons set out below, we conclude that, when Judge Thompson stated that defendant had been reduced to custody, he effectively established the courtroom as a correctional facility for purposes of ORS 162.155(1)(c). Before being remanded to custody at the hearing, defendant had enjoyed conditional release status and, during that period, he was neither in custody nor in a correctional facility. At the hearing, however, Judge Thompson informed defendant that he was "reduced to custody." In other words, Judge Thompson effectively told defendant that his pretrial release status had been revoked, that he was not free to leave the courtroom, and that he was required to go to the county jail pending trial.

Previous decisions by this court have stated that a person who is incarcerated following a conviction is constructively within a "correctional facility" even when he is not within the walls of the prison. Rather, as this court noted in *Smith*, such a person "is considered to be confined in a correctional facility from the time of his original commitment until his lawful discharge." 277 Or at 257. Here, defendant's incarceration, conditional release, and revocation of release all occurred *before* trial, rather than after conviction, as in *Smith*. In our view, however, that factual distinction is irrelevant to the interpretation and application of ORS 162.155(1)(c), which applies to any escape from a "correctional facility," whether the defendant is incarcerated before trial or following conviction. Defendant was confined at the time of his "original commitment"; after Judge Thompson revoked his conditional release, he returned to his former status. Defendant can hardly argue that, at that point, he had been "lawfully discharged" as this court used those words in *Smith*. Accordingly, when Judge Thompson ordered defendant's release revoked and that he be returned to jail, that order plainly "confined" defendant to the courtroom, under the authority of the deputy sheriff, thus constituting the courtroom a "correctional facility" for purposes of the second-degree escape statute. *See* ORS 162.135(2) ("Correctional

facility" defined as "any place used for the confinement of persons * * * confined under a court order.").

In that respect, we note an additional fact that removes the issue from doubt: the presence of the deputy sheriff who had brought the codefendants to court. Those two codefendants clearly remained in constructive custody, and the sheriff was the symbol of that status. Judge Thompson's order placed defendant directly under the authority of the deputy sheriff, *i.e.*, placed defendant in the same position as his two codefendants. And that position was, as we have noted, constructive custody in a correctional facility. We conclude that defendant, when he left the courtroom, escaped from a correctional facility under ORS 162.155(1)(c).

■ The second issue is whether the state proved that defendant had the necessary mental state regarding the element of "escaping from a correctional facility." Defendant argued, and the Court of Appeals agreed, that defendant's conviction for second-degree escape was invalid because ORS 162.155(1)(c) requires the state to prove that defendant "knowingly" escaped from a correctional facility, and the state failed to do so. We disagree, because the trial court correctly found that the evidence proved that defendant had possessed the appropriate mental state respecting that element of the crime.

The indictment in this case charged defendant with "knowingly" escaping from a correctional facility. Generally, "a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state." ORS 161.095(2). Having alleged that defendant acted knowingly, the state was required to prove defendant's knowledge.

Sufficient evidence exists in this record from which the trial court could have concluded that defendant knowingly escaped from a correctional facility. At the earlier proceeding, Judge Thompson had allowed the state's motion to revoke defendant's release status, signed the order in defendant's presence, and told defendant that he had revoked defendant's release. To clarify the effect of his order, Judge Thompson repeatedly informed defendant that he had been

"reduced to custody." It was clear from the judge's words that defendant was being returned to jail. And, in a behavioral acknowledgment of the fact that defendant realized that he was being returned to jail, he fled. The state was not required to prove that defendant understood the statutory definitions contained in ORS 162.155(1)(c) or the specific differences between escape from "custody" and escape from a "correctional institution." Defendant knew that he previously had been lodged in the Crook County Jail and that, based on the judge's order, the deputy sheriff from the jail, who was present in the courtroom, would transport defendant back to the jail immediately after the hearing. That evidence was sufficient to prove that the defendant knew that he was escaping from a location that was deemed to be a correctional facility.

We conclude that the courtroom from which defendant fled was a correctional facility within the meaning of ORS 162.155(1)(c) and that Judge Thompson in effect made the courtroom a correctional facility by directing that defendant be reduced to custody. We also are satisfied that, when defendant escaped, he was aware that he was escaping from what constructively was a correctional facility.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.