Argued and submitted December 5, 1990, affirmed May 15, 1991

In the Matter of
John David Stout, Jr., a Child.

STATE ex rel JUVENILE DEPARTMENT
OF CURRY COUNTY,
*Respondent,*

*v.*

John David STOUT, Jr.,
*Appellant.*

(2692; CA A62837 (Control), A62908)
(Cases Consolidated)

811 P2d 660

M. John Spicer, Gold Beach, filed the brief for appellant.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Child appeals an order of the juvenile court that he is within its jurisdiction because of conduct that, if done by an adult, would constitute resisting arrest and escape in the first degree. ORS 162.315; ORS 162.165. He argues that he was not under "arrest" for purposes of the statutes defining those offenses and that there was insufficient evidence to support the court's finding that he committed those offenses. We affirm.

The testimony given by two witnesses called by child conflicted with the testimony given by the arresting officer. We review *de novo*. ORS 419.561(4). The juvenile court made no express findings; however, because of the result that it reached, the court apparently found the officer more credible than child's witnesses. So do we. Having independently assessed and evaluated the testimony, we reconstruct the facts from the officer's testimony.

Deputy Creighton stopped a pickup driven by Haga. Child and Henderson were passengers in the pickup. Creighton saw a keg of beer in plain view behind the seat of the pickup. He had Haga get out and perform field sobriety tests. He arrested Haga for driving under the influence of intoxicants, handcuffed him and put him in his patrol car.

Creighton also had child get out of the pickup. He determined that child was 17 years old and that his breath bore an odor of alcohol. Creighton told child that he was going to give him a citation for being a minor in possession of alcohol by consumption. ORS 471.430. He asked child for some information in order to write the citation. Child gave Creighton his name and date of birth, "but he advised [Creighton that he] couldn't prove anything and that he was going to leave and [Creighton] couldn't hold him there." Although Creighton advised him not to leave, child began to walk away. Creighton attempted to take hold of child, child pulled away, they struggled, and Creighton forced him to the ground. Creighton let child up and walked him over to his patrol car in order to get some cuffs to secure him. By that point, Creighton had advised child that he was in custody.

Creighton tried to put the cuffs on child. Again, they struggled, and again Creighton forced him to the ground.

While child was on the ground, he again tried to put the cuffs on, but child kept one arm underneath him. Two bystanders then approached. Creighton told them that child was under arrest and asked for their help, but they declined. Henderson then got out of the pickup and told Creighton to let child up. Henderson was threatening Creighton with his fists raised. Creighton let child up and took out his nightstick. Henderson and child both came toward Creighton with their fists raised. Henderson was yelling, "Come on, come on." Creighton told them that they were under arrest. Henderson then helped Haga get out of the patrol car. Creighton moved toward the patrol car, but child stood in front of him with his fists raised saying, "Come on, come on." Henderson and child again came toward Creighton with their fists raised. Creighton told Henderson, child and the bystanders, who had refused to help him, that they were under arrest and not to leave. The bystanders ran toward a car across the street. While child was still standing in front of Creighton with his fists raised, Henderson started to lead Haga away. Creighton told Haga and child not to leave. However, child said, "I'm not staying here," and he started walking away. Creighton told child several times that "he was going to go to jail and/or be arrested," but child just kept walking away. Creighton then secured Haga and waited for assistance.

█    Child notes that Creighton was not authorized to arrest him for minor in possession of alcohol, which is a violation. ORS 471.430; ORS 133.310(1)(j). Therefore, he argues, there was no arrest as that term is used in defining the offenses of resisting arrest and escape.[1] The term "arrest" is

---

[1] ORS 162.315 provides, in pertinent part:

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer *in making an arrest.*

"(2) 'Resists,' as used in this section, means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to the arresting officer. Passive resistance does not constitute behavior intended to prevent being taken into custody." (Emphasis supplied.)

ORS 162.165 provides, in pertinent part:

"(1) A person commits the crime of escape in the first degree if:

"(a) Aided by another person actually present, the person uses or threatens

not expressly defined for purposes of the statutes that define those offenses.[2] However, ORS 162.315(3) provides that, for purposes of resisting arrest, "[i]t is no defense to a prosecution under this section that the peace officer lacked legal authority to make the arrest, provided the peace officer was acting under color of official authority." *Commentary to the Proposed Oregon Criminal Code* 204-05, § 206 (1970), explains subsection (3):

> " 'Color of authority' is intended to mean: 'That semblance of [sic] presumption of authority sustaining the acts of a public officer which is derived from his apparent title to the office or from a writ or other process in his hands apparently valid and regular.' (*Black's Law Dictionary* 331 (4th ed 1951)). Subsection (3) departs from common law and the American majority view governing the right to resist an unlawful arrest. The prevailing rule has generally allowed reasonable resistance to an unlawful arrest on the ground of self-defense.

> "The Commission rejects self-help as a desirable means of challenging arrests made under color of law. Resistance demands an escalation of force by the peace officer. Civil disorder and disrespect for the law is thereby threatened. Two important, and sometimes conflicting, interests must be balanced; the individual's right to bodily security measured against the threat to society posed by violent street confrontations between private citizens and the police. The Commission favors recourse by the aggrieved citizen to traditional tort remedies, which today have been greatly liberalized in favor of the individual citizen."

The language of and commentary to ORS 162.315(3) demonstrate that the term "arrest" does not depend on the officer's statutory authority to make an arrest, so long as the officer was acting under "color of official authority." Child does not dispute that Creighton was acting under "color of official authority"; he was a policeman, wearing a uniform and driving a patrol car. Moreover, child does not dispute that he was under sufficient restraint to constitute an arrest. Even if Creighton's attempts to place him under actual restraint

---

to use physical force in escaping from custody or a correctional facility * * *."

[2] Child points to the definition of arrest in ORS 133.005(1). However, that definition applies only to specified sections of ORS chapters 131 and 133.

did not constitute an arrest, he told child that he was under arrest when child and Henderson first came at him with their fists raised. That constituted constructive restraint.[3] Therefore, child was under arrest for the purposes of ORS 162.315. The language of and commentary to ORS 162.315(3) support the conclusion that the statute prohibited child from resisting that arrest, even if child believed that Creighton had no statutory authority to arrest him.

■　　　　Child also argues that, even if there was an arrest, he did not resist the arrest for purposes of ORS 162.315. When child came toward the officer with his fists raised, he threatened the use of violence that created a substantial risk of physical injury to both the officer and himself. *See* ORS 162.315(2). Therefore, he resisted the arrest for purposes of ORS 162.315.

■　　　　ORS 162.165 defines the crime of escape in the first degree in terms of escape from custody. " 'Custody' means the imposition of actual or constructive restraint by a peace officer *pursuant to an arrest* or court order * * *." ORS 162.135(3). (Emphasis supplied.) Creighton's statement to child that he was under arrest was sufficient to impose "constructive restraint * * * pursuant to an arrest" and, therefore, custody for the purposes of ORS 162.165. *See State v. Gleason,* 94 Or App 208, 210, 764 P2d 964 (1988); *State v. Swanson,* 34 Or App 59, 62, 578 P2d 411 (1978).[4]

■　　　　Finally, child argues that, even if there was an arrest, his actions did not constitute the crime of escape in the first degree. After Creighton told child that he was under arrest, he and Henderson came toward Creighton again with their fists raised. Immediately after that, child told Creighton that he was not staying and walked away. Aided by Henderson, child threatened to use physical force in escaping custody. That conduct constituted escape in the first degree. ORS 162.165(1)(a).

Affirmed.

---

[3] It is not clear whether Creighton told child that he was under arrest before that time.

[4] For the reasons expressed in our discussion rejecting child's claim that his adjudication for resisting arrest was improper, we reject child's claim that the officer had no statutory authority to arrest him, as it relates to the adjudication for escape.