Argued and submitted November 29, 2000, affirmed February 21, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# ERIC RAMON METCALFE,
*Appellant.*

(97-09-37310; CA A100404)

19 P3d 374

Robin A. Jones, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, State Public Defender.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

Multnomah County Sheriff's Deputy Ezell brought defendant from the Multnomah County courthouse jail to a courtroom for a proceeding in a criminal case. Once inside the courtroom, the deputy removed defendant's handcuffs and told him to sit in a chair at counsel table and "remain there." Ezell took a seat farther back in the courtroom. Approximately 35 minutes later, while the judge in the case was speaking from the bench, defendant turned in his chair, jumped up, and started to run toward the door of the courtroom. As defendant ran past Ezell, he "pushed off of" him; Ezell was unable to get a good grip on defendant. Another deputy, Peterson, grabbed defendant at the door. Defendant's momentum carried both defendant and Peterson out the door into the hallway. There, several officers subdued defendant, who was fighting and kicking. The struggle in the hallway lasted approximately 30 seconds.

Based on that incident, defendant was convicted of one count of escape in the second degree. ORS 162.155(1)(a). He appeals, arguing that the trial court erred in denying his motion for judgment of acquittal. In particular, defendant asserts that there was insufficient evidence from which the jury could find him guilty of the offense because, during the incident, he remained within either the constructive restraint of the courtroom or the actual restraint of one or more deputies. According to defendant, under those circumstances, he did not "escap[e] from custody" within the meaning of ORS 162.155(1)(a). We disagree and, therefore, affirm.

In determining whether a trial court correctly denied a criminal defendant's motion for judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether any rational trier of fact, accepting reasonable inferences and making reasonable credibility choices, could have found, beyond a reasonable doubt, the essential elements of the offense. *See State v. King*, 307 Or 332, 339, 768 P2d 391 (1989); *State v. Evans*, 161 Or App 86, 89, 983 P2d 1055 (1999) (citing *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den* 514 US 1005 (1995)). In this case, before considering the evidence, we first must

determine the precise nature of those elements—that is, the scope of the conduct prohibited by ORS 162.155(1)(a). That statute provides:

"A person commits the crime of escape in the second degree if:

"(a)   The person uses or threatens to use physical force escaping from custody[.]"

Defendant does not dispute that he used physical force during the incident. The resolution of this case therefore centers on the meaning of "escaping from custody." Applying the familiar analytical methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993), we determine the legislature's intended meaning by examining the text and context of the statute and, if necessary, its legislative history and applicable maxims of statutory construction.

■      ORS 162.155 does not itself expressly define any of the terms used therein. A related statute does so, however. ORS 162.135(5) defines the term "escape" for purposes of escape in the second degree as "the unlawful departure of a person from custody[.]"[1] The key words in that phrase are "departure" and "custody." As it is ordinarily understood, a "departure" includes "a setting out (as on a journey * * * )." *Webster's Third New Int'l Dictionary*, 604 (unabridged ed 1993). ORS 162.135(4) expressly defines the term "custody" as "the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order[.]" The plain meaning of the term "restraint" includes "an act of restraining, hindering, checking, or holding back from some activity" and "the condition of being restrained, checked, or controlled." *Id.* at 1937. The plain meaning of the term "restrain" includes "to hold (as a person) back from some action, procedure, or course : prevent from doing something" and "to limit or restrict to or in respect to a particular action or course : keep within bounds or under control." *Id.* at 1936. In addition, the preposition "from" is "used as a function word to indicate a starting point: as (1) a point or place where an

---

[1] The definitions set forth in ORS 162.135 are expressly made applicable to the crime of escape in each of its degrees, among other crimes.

actual physical movement (as of departure [or] withdrawal * * *) has its beginning." *Id.* at 913. From those express statutory definitions, as well as the plain meanings of the terms used in the definitions, we conclude that a person "escap[es] from custody" within the meaning of ORS 162.155(1)(a) when a person subject to actual or constructive restraint or control by a peace officer sets out on a course of action and that setting out results, even momentarily, in the person no longer being within the peace officer's restraint or control.

■     Because it is central to the resolution of this case, the concept of "constructive restraint" and its boundaries merits special discussion. As explained above, the term "custody" embodies the concepts of restraint and control. In addition, the term "constructive" means, in essence, having the same effect as the equivalent actual thing. *See Black's Law Dictionary*, 309 (7th ed 1999) (in law, the term "constructive" means "imputed; having an effect in law though not necessarily in fact").[2] Consequently, for the purpose of ORS 162.155(1)(a), the scope of a peace officer's constructive custody over a person consists of those boundaries within which the peace officer can and does exercise *effective* control over the person. A person therefore escapes from the constructive custody of a peace officer within the meaning of ORS 162.155(1)(a) when the person sets out on a course of action and that setting out results, even momentarily, in the person no longer being within the peace officer's effective restraint or control.

That interpretation is consistent with *State v. Fitzgerald*, 16 Or App 376, 518 P2d 678 (1974). There, while

---

[2] *See also Webster's Third New Int'l Dictionary* at 489 (defining "constructive" in part as "derived from or depending on construction or interpretation : not directly expressed : inferred—often used in law of an act or condition assumed from other acts or conditions which are considered by inference or by public policy as amounting to or involving the act or condition assumed"). Several cases discuss the meaning and application of the term "constructive" as applied to confinement in a correctional facility. *See, e.g., State v. Hutcheson*, 251 Or 589, 447 P2d 92 (1968); *State v. Ratliff*, 89 Or App 483, 749 P2d 616 (1988). But we have not identified a case directly addressing the term's meaning and application in the context of a police officer's "custody"—that is, a police officer's restriction and control—under ORS 162.155(1)(a) and its related definitions.

being escorted from the Marion County Courthouse to a vehicle for transport to the Oregon State Penitentiary, the defendant "broke and ran." He did not get more than 15 or 20 steps ahead of the guard, however, before he stopped in response to a guard's warning shot, after which guards returned him to the transport vehicle. *Id.* at 377. This court concluded that there was evidence to support a finding that the defendant was "physically and unlawfully out of the guard's custody although only momentarily so." *Id.* at 379. In so concluding, the court explained:

> "We think the physical definition of escape applies, as it was given by Perkins, Criminal Law 432 (1957):
>
> " '* * * [T]he limits within which a prisoner may be required by law to remain, at a certain time, may be the walls of his cell, the walls of his prison, the boundaries of the prison farm, *the immediate presence of his guard on the street or elsewhere* * * *. Whatever the limits may be for him at the time[,] a departure therefrom is the physical part of an escape.' (Emphasis supplied.) (Footnotes omitted.)"

*Id.* at 379. *See also State v. Hassman*, 78 Or App 496, 717 P2d 245, *rev den* 301 Or 240 (1986) (rejecting the defendant's argument that, because an officer was in continuous pursuit of him after he broke free and ran, he was at all times in constructive restraint and therefore took only a substantial step toward escaping—that is, was guilty only of attempted escape in the second degree).

Here, the evidence shows that Deputy Ezell brought defendant to the courtroom, escorted him to counsel table, and directed him to be seated there. Although the deputy took a seat farther back in the courtroom, defendant remained in the constructive custody of the deputy. Accordingly, defendant was required to remain within those boundaries within which Deputy Ezell was able to, and did, maintain effective control over him. The evidence clearly demonstrates, however, that defendant jumped up from his chair at counsel table and ran toward the courtroom door; that, as defendant ran by Deputy Ezell, he "pushed off of" the deputy; and that the deputy was unable to get a grip on defendant. A reasonable jury could find that defendant

"escap[ed] from custody" within the meaning of ORS 162.155(1)(a) at the time he "pushed off of" Deputy Ezell and continued toward the door of the courtroom, because at that time his action of setting out on the described course of conduct resulted, however momentarily, in his no longer being within the deputy's effective restraint or control. Nor is it significant that, by happenstance, defendant's actions took place within the four walls of the courtroom or that there were other deputies present, some of whom subsequently regained control of defendant; none of those circumstances was relevant to the scope of the constructive custody to which defendant was subject. The trial court correctly denied defendant's motion for judgment of acquittal on the charge of escape in the second degree.[3]

Affirmed.

---

[3] We emphasize that our interpretation of ORS 162.155(1)(a) does not preclude a finding by a jury that a person in the actual or constructive custody of a peace officer merely attempted to commit escape in the second degree as provided in that paragraph. For example, a jury might find that a person who was in actual custody in the back seat of a patrol car and who kicked out a window of the car with the intent of exiting through the broken window, but who was prevented from doing so, took only a substantial step toward committing escape in the second degree as provided in ORS 162.155(1)(a). Similarly, if defendant in this case had gotten up from his chair and started running toward the door of the courtroom, but was successfully restrained by Deputy Ezell as he passed, a jury might have found that defendant took only a substantial step toward committing escape in the second degree as provided in ORS 162.155(1)(a).