Argued and submitted May 28, affirmed July 8, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES B. THOMAS,
*Defendant-Appellant.*

Union County Circuit Court
M12624; A135855

211 P3d 979

Carolyn Bys, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Robin Rojas McIntyre, Assistant Attorney General.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for, among other things, escape in the third degree, ORS 162.145. He assigns error to the trial court's denial of his motion for a judgment of acquittal on that charge, arguing that there was insufficient evidence that he was in "custody" at the time of his departure from the presence of a police officer. We conclude that, because there is evidence from which a rational finder of fact could find that defendant was under arrest at the time, the evidence was sufficient to establish that he was in "custody." We therefore affirm.

Corporal Perry of the Elgin Police Department was dispatched to an apartment complex to investigate a disturbance. When he arrived, he found defendant and another man, Johnston, fighting. Perry called for backup and ordered defendant and Johnston to stop fighting and get on the ground. When the orders had no effect, Perry drew his Taser and again ordered the two men to the ground. Defendant and Johnston complied.

When backup arrived, defendant began to walk away. Perry told defendant not to leave the scene, but defendant walked over to a tree located about 20 yards away. Defendant apparently attempted to climb the tree, but fell. Perry approached defendant, asked him if he was all right, and told him that an ambulance was on the way. Defendant responded, "fuck off," and started to leave. As defendant stood up, he was a few feet away from Perry. The officer told defendant that he was not free to leave and that he needed to sit back down. Defendant turned to walk away anyway, and Perry told him that he was under arrest for disorderly conduct. Defendant bolted.

Perry chased defendant, wrestled him to the ground, and sprayed him with pepper spray. Defendant stumbled into a bush and kicked and resisted as Perry attempted to restrain him. Perry eventually was able to restrain defendant when a backup officer arrived to provide assistance.

Defendant was charged with, among other things, escape in the third degree. At trial, after the state adduced

evidence of the foregoing events, defendant moved for a judgment of acquittal on that charge on the ground that the state had failed to prove that he had escaped from "custody" within the meaning of the statute defining the offense. According to defendant, although Perry had told him that he was under arrest, the officer "never actually laid a hand" on him, which he contended is a necessary component of placing an individual in actual or constructive restraint. The trial court denied the motion, reasoning that, when Perry told defendant that he was under arrest, defendant was constructively restrained, which is sufficient to establish the required "custody."

■ On appeal, defendant contends that the trial court erred in denying his motion for a judgment of acquittal. As he did before the trial court, he argues on appeal that, because Perry had failed to touch defendant, the verbal instruction that he was under arrest was not sufficient to establish that he was constructively restrained. The state responds that we rejected that very argument in *State ex rel Juv. Dept. v. Stout*, 107 Or App 233, 238, 811 P2d 660 (1991), when we held that words manifesting the intent to arrest are sufficient to impose constructive restraint for the purposes of establishing the offense of escape. Defendant acknowledges that his argument runs against the grain of *Stout*, but he insists that *Stout* was incorrectly decided and, in any event, has been implicitly overruled by our more recent decision in *State v. Metcalfe*, 172 Or App 501, 19 P3d 374 (2001).

When we review a trial court's denial of a motion for a judgment of acquittal, our task ordinarily is to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). In this case, the parties do not dispute what the evidence shows; rather, they dispute whether that evidence is sufficient to satisfy the elements of the statute that defines the offense. Their dispute, in other words, pertains to the meaning of the statute itself. That is a question of law. *State v. Stamper*, 197 Or App 413, 416, 106 P3d 172, *rev den*, 339 Or 230 (2005).

ORS 162.145 defines the offense of escape in the third degree. The statute provides that "[a] person commits the crime of escape in the third degree if the person escapes from custody." The word "escape" is defined for the purpose of ORS 162.145 to mean "the unlawful departure of a person from custody or a correctional facility." ORS 162.135(5). The word "custody," in turn, is defined for the purposes of the same statute to mean "the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order." ORS 162.135(4).

In this case, there is no contention that, when Perry told defendant that he was under arrest, defendant was *actually* restrained. The question is whether, at that point, Perry had imposed *constructive* restraint.

This court addressed the meaning and application of "constructive restraint" in *Stout*. In that case, an officer stopped a vehicle, and one of the passengers—a 17-year-old youth—got out and began to walk away. The officer told the youth that he was in custody. 107 Or App at 235. Another passenger, however, approached the officer to prevent the officer from placing handcuffs on the youth. *Id.* at 235-36. The officer told both the youth and the other passenger that they were under arrest. The youth left the scene anyway and, for that, was charged with resisting arrest and escape in the first degree. On appeal, the youth argued that his actions did not constitute either resisting arrest or first-degree escape. *Id.* at 236. As to the former offense, he argued that the evidence did not show that the officer had actually placed him under arrest. *Id.* at 237. This court disagreed, explaining that when the officer "told [the youth] that he was under arrest * * * [t]hat constituted constructive restraint" sufficient to constitute arrest. *Id.* at 238. When the youth complained that the evidence was likewise insufficient to establish first-degree escape, the court responded that, when the officer told the youth that he was under arrest and the youth walked away, that conduct constituted escape. *Id.*

In two other cases, this court concluded that the evidence was not sufficient to establish constructive restraint because the officer in each case had failed to use words manifesting an intent to apprehend the defendant, the words that

were sufficient in *Stout*. In *State v. Swanson*, 34 Or App 59, 61, 578 P2d 411 (1978), the officer told the defendant, "You are drunk," and the defendant then turned and ran away. We concluded that the defendant had not escaped from constructive restraint because the words "You are drunk" are not "appropriate words of arrest manifesting the purpose of apprehending [the] defendant." *Id*. at 62. Similarly, in *State v. Gleason*, 94 Or App 208, 210, 764 P2d 964 (1988), an officer approached the defendant in a bar, told her that there was an outstanding warrant for her arrest, and suggested that they go outside to talk about it. She fled the bar, but was later apprehended and charged with third-degree escape. We concluded that what the officer told her was not sufficient to place her in constructive custody because "an officer's statement that he wishes to talk outside with a defendant about a warrant is insufficient to constitute constructive restraint." *Id*. We explained that, "for custody to occur without actual restraint, a police officer must state words of arrest manifesting the purpose of apprehending a defendant." *Id*. (internal quotation marks and brackets omitted).

Consistent with those decisions is the Supreme Court's more recent decision in *State v. Lane*, 341 Or 433, 144 P3d 927 (2006). In that case, the defendant appeared in court on charges that he had violated the terms of a release agreement. Present in the courtroom at the hearing was a deputy sheriff. *Id*. at 435. The court found that the defendant had indeed violated the terms of the agreement and revoked it. The court then informed the defendant that he had been "reduced to custody." *Id*. at 435-36. Shortly after that, the defendant left the court by a side door. He was charged with, and convicted of, escape in the second degree. *Id*. at 436. On appeal, he argued that there was no evidence that he had escaped from a "correctional facility," because the courtroom is not such a facility. *Id*. The Supreme Court disagreed. The court concluded that the trial judge, in declaring that the defendant had been "reduced to custody" in the presence of the deputy sheriff, had placed him in constructive custody and thereby made the courtroom a correctional facility. *Id*. at 439-40. Although the precise question before the court was whether the courtroom was a "correctional facility" within

the meaning of the statute defining the offense of second-degree escape, the fact remains that the reasoning by which the court answered that question was that the mere pronouncement of the court, in the presence of the deputy sheriff, had the effect of placing the defendant in constructive restraint. That reasoning, which is the same reasoning that supplied the underpinning of *Stout*, applies to this case, in which the police officer told defendant that he was under arrest.

As we have noted, defendant acknowledges the authorities that are contrary to his position, but argues that they have been superseded by our more recent decision in *Metcalfe*, 172 Or App at 505, in which we held that a person commits the offense of second-degree escape when he or she causes a peace officer to lose "effective control" over that person. According to defendant, *Metcalfe* implicitly adopted a rule that, consistently with early common-law conceptions of arrest, constructive restraint requires actual physical contact or submission. That, he insists, is not reconcilable with our earlier escape decisions.

Defendant's argument reads too much into *Metcalfe*. In that case, the defendant happened to be in a courtroom on trial for an unrelated offense. A deputy had brought him into the courtroom and told him to "remain there." 172 Or App at 503. The deputy then took a seat at the back of the courtroom. While the trial judge was speaking, the defendant took off for the door and pushed the deputy out of the way as he ran by. The defendant was ultimately apprehended in the hall outside the courtroom and charged with second-degree escape. *Id.* After conviction for that offense, the defendant appealed, arguing that his conduct did not amount to second-degree escape because he never really left the actual or constructive restraint of the deputies. *Id.* We concluded that, when the defendant ran from the courtroom, pushing away the deputy, he committed second-degree escape. *Id.* at 506-07. We explained that "[a] person * * * escapes from the constructive custody of a peace officer * * * when the person sets out on a course of action and that setting out results, even momentarily, in the person no longer being within the peace officer's effective restraint or control." *Id.* at 505.

In *Metcalfe*, we did not overrule *Stout*, *Swanson*, or *Gleason*. In fact, we did not mention them. That is because the issue in *Metcalfe*—what is sufficient to establish that an individual broke free from constructive restraint—is an entirely different issue from the one addressed in the earlier cases—what is sufficient to establish that an individual is subject to constructive restraint in the first place. Nor did we discuss common-law conceptions of arrest. We did not, in fact, discuss the meaning of the term "arrest" at all. We certainly did not adopt the construction of the term that defendant proposes in this case—that constructive restraint requires actual physical contact or submission. Nor has the proposal been adopted in any other Oregon decision of which we are aware. *Cf. State v. Puffenbarger*, 166 Or App 426, 433, 998 P2d 788 (2000) ("unlike the analysis under the Fourth Amendment, the Oregon Constitution does *not* require a submission to authority or the use of physical force for police action to constitute a seizure" (emphasis added)).

■ We conclude that, as we held in *Stout*, *Swanson*, and *Gleason*—and as the Supreme Court also suggested in *Lane*—it is sufficient to establish that an individual is in constructive custody that an officer "state words of arrest manifesting the purpose of apprehending a defendant." *Gleason*, 94 Or App at 210 (internal quotation marks and brackets omitted). It is undisputed in this case that the officer told defendant that he was under arrest. That is sufficient to establish that defendant was in custody for the purposes of establishing the offense of third-degree escape. The trial court, therefore, correctly denied defendant's motion for a judgment of acquittal.

Affirmed.