Submitted September 20, affirmed November 17, 2010, petition for review
denied February 17, 2011 (349 Or 654)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## EMRYS JULIAN ALEXANDER,
*Defendant-Appellant.*

Multnomah County Circuit Court
080331167; A140307

243 P3d 476

Garrett A. Richardson and Multnomah Defenders, Inc., filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

BREWER, C. J.

### BREWER, C. J.

Defendant was convicted of, among other offenses, second-degree escape. ORS 162.155(1). On appeal, he asserts that the trial court erred in denying his motion for a judgment of acquittal on that charge on the ground that there was insufficient evidence from which a rational factfinder could find that he escaped from "custody" within the statutory meaning of the term. We affirm.

Because this case arises from defendant's motion for a judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Casey*, 346 Or 54, 56, 203 P3d 202 (2009). Officer Dorn is a member of the police department's K-9 unit. Dorn responded with his dog, Ranger, to a 9-1-1 call that an unknown person had jumped into the bed of a pick-up truck that was traveling westbound. Dorn was in uniform and driving a marked police car. As Dorn drove eastbound toward the location reported by the caller, he saw defendant sprinting toward him down the middle of the street as cars swerved to avoid defendant. Defendant was running away from the place reported by the caller, in Dorn's view, as if he had just committed a crime.

When defendant saw Dorn's car, defendant veered off the street into a parking lot. Dorn activated his lights and siren, spun his car around, and cut defendant off. Defendant stopped running, and Dorn jumped out of the car and ordered defendant to the ground "with a lot of verbal force." Dorn sternly shouted, "Get down on the ground, get down on the ground," because he wanted defendant to stop running. As this was happening, Dorn heard through his radio that the suspect in the 9-1-1 call had jumped out of the pick-up truck and was running westbound; Dorn thought that "this has to be the guy."

When Dorn ordered defendant to the ground, defendant complied by lying down on his stomach. While he was lying on the ground, defendant kept his head turned back so that he could watch Dorn's movements. Defendant asked Dorn why he was being stopped and told Dorn, "I didn't do anything." Dorn ordered defendant to "wait there and we'll figure this out in a moment." Dorn tried to get on the radio to report that he had defendant, but he had to wait for other

radio traffic to clear. Dorn repeated to defendant to stay on the ground and warned him not to move. When Dorn began to tell his dispatcher that "I think I have the guy," defendant sprang to his feet and took a swing at Dorn. Dorn backed away, and defendant hit Dorn in the chin and began to run away. Using a remote control device, Dorn opened the car door and ordered Ranger to "take" defendant. Defendant had stumbled, and Ranger got hold of his arm. Defendant went down on all fours and, after being bitten another time by Ranger, went completely down on the ground.

At the close of the evidence at trial, defendant moved for a judgment of acquittal on the second-degree escape charge. Defendant argued that he was not in custody during his interaction with Dorn, or that in the alternative, because Dorn did not tell him he was under arrest, defendant never knew that he was in custody. The trial court denied the motion, defendant was convicted, and this appeal ensued.

ORS 162.155 provides, in part:

"(1)   A person commits the crime of escape in the second degree if:

"(a)   The person uses or threatens to use physical force escaping from custody[.]"

For the purposes of escape, a person is in "custody" if, "pursuant to an arrest or court order," he or she is within the "actual or constructive restraint" of a peace officer." ORS 162.135(4). Because "arrest" is not defined in the escape statutes, this court has looked to the definition of that term in ORS 133.005(1) in considering the sufficiency of evidence to show that a defendant was in custody "pursuant to arrest." *State v. Swanson*, 34 Or App 59, 61, 578 P2d 411 (1978). ORS 133.005(1) provides that, " '[a]rrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense. A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest." Under that statute, the physical action that an officer takes to effect an arrest must be done "for the purpose of charging that person with an offense." *State v. Pierce*, 226 Or App 224, 229, 203 P3d 290, *rev den*, 346 Or 213 (2009).

In sum, a person is in "custody" for purposes of ORS 162.155(1)(a), if (1) a peace officer has actually or constructively restrained the person (2) for the purpose of charging him or her with an offense. Defendant challenges the sufficiency of the evidence in both respects. We begin with the issue of restraint. The state does not contend that Dorn actually restrained defendant but, rather, it asserts that defendant was constructively restrained. This court addressed the meaning and application of "constructive restraint" in *State ex rel Juv. Dept. v. Stout*, 107 Or App 233, 238, 811 P2d 660 (1991). In that case, an officer stopped a vehicle, and one of the passengers—a 17-year-old youth—got out and began to walk away. The officer told the youth that he was in custody. *Id.* at 235. Another passenger, however, approached the officer to prevent the officer from placing handcuffs on the youth. *Id.* at 235-36. The officer told both the youth and the other passenger that they were under arrest. The youth left the scene anyway and, for that, was charged with resisting arrest and escape in the first degree. On appeal, the youth argued that his actions did not constitute either resisting arrest or first-degree escape. *Id.* at 236. As to the former offense, he argued that the evidence did not show that the officer had actually placed him under arrest. *Id.* at 237. This court disagreed, explaining that when the officer "told [the youth] that he was under arrest * * * [t]hat constituted constructive restraint" sufficient to constitute arrest. *Id.* at 238. In response to the youth's complaint that the evidence was likewise insufficient to establish first-degree escape, the court held that, when the officer told the youth that he was under arrest and the youth walked away, that conduct constituted escape. *Id.*

In several earlier cases, this court had concluded that the evidence was not sufficient to establish constructive restraint because the officer had failed to use words manifesting an intent to apprehend the defendant. In *Swanson*, the officer told the defendant, "You are drunk," and the defendant then turned and ran away. 34 Or App at 61. We concluded that the defendant had not escaped from constructive restraint because the words "You are drunk" are not "appropriate words of arrest manifesting the purpose of apprehending [the] defendant." *Id.* at 62. Similarly, in *State*

*v. Gleason*, 94 Or App 208, 210, 764 P2d 964 (1988), an officer approached the defendant in a bar, told her that there was an outstanding warrant for her arrest, and suggested that they go outside to talk about it. The defendant fled the bar, but was later apprehended and charged with third-degree escape. We concluded that an officer's statement that he wishes to talk outside with a defendant about a warrant is insufficient to constitute constructive restraint. *Id.* We explained that, "for custody to occur without actual restraint, a police officer must state words of arrest manifesting the purpose of apprehending a defendant." *Id.* (internal quotation marks and brackets omitted).

Consistent with those decisions is the Supreme Court's more recent decision in *State v. Lane*, 341 Or 433, 144 P3d 927 (2006). In that case, the defendant appeared in court on charges that he had violated the terms of a release agreement. Present in the courtroom at the hearing was a deputy sheriff. *Id.* at 435. The court determined that the defendant had indeed violated the terms of the agreement and revoked it. The court then informed the defendant that he had been "reduced to custody." *Id.* at 435-36. Shortly after that, the defendant left the courtroom by a side door. He was charged with, and convicted of, escape in the second degree. *Id.* at 436. On appeal, he argued that there was no evidence that he had escaped from a "correctional facility," because a courtroom is not such a facility. *Id.* The Supreme Court disagreed. The court concluded that the trial judge, in declaring in the presence of the deputy sheriff that the defendant had been "reduced to custody," had placed defendant in constructive custody and that the courtroom was, therefore, a "correctional facility" for purposes of the second-degree escape statute. *Id.* at 439-40. Thus, under the court's reasoning, the mere pronouncement of the court in the presence of the deputy sheriff that the defendant was in custody had the effect of placing the defendant in constructive restraint.

Finally, in *State v. Thomas*, 229 Or App 453, 211 P3d 979, *rev den*, 347 Or 349 (2009), a police officer told the defendant that he was under arrest but did not physically control him. We applied the reasoning of the foregoing cases to conclude that there was sufficient evidence to present a jury

question as to whether the defendant had been constructively restrained. We explained:

> "[A]s we held in *Stout, Swanson,* and *Gleason*—and as the Supreme Court also suggested in *Lane*—it is sufficient to establish that an individual is in constructive custody that an officer 'state words of arrest manifesting the purpose of apprehending a defendant.' *Gleason,* 94 Or App at 210 (internal quotation marks and brackets omitted). It is undisputed in this case that the officer told defendant that he was under arrest. That is sufficient to establish that defendant was in custody for the purposes of establishing the offense of third-degree escape."

*Thomas,* 229 Or App at 460.

Defendant argues that *Thomas,* and the cases underlying that decision, require an express statement by the officer that the defendant is under arrest in order to establish constructive restraint. We reject that argument. *But see Gleason,* 94 Or App at 210 ("[F]or custody to occur without actual restraint, a police officer must state 'words of arrest manifesting an officer's purpose of apprehending [a] defendant.' "). Although what was stated in *Thomas* is sufficient to establish that a person is in constructive custody, those decisions do not compel the conclusion that a particular oral litany is necessary to establish constructive restraint. The term "constructive restraint" is not statutorily defined. However, both words have plain meanings that cohere in a pragmatic way. "Constructive" means "[l]egally imputed; having an effect in law though not necessarily in fact." *Black's Law Dictionary* 333 (8th ed 2004); *see also State v. Metcalfe,* 172 Or App 501, 505, 19 P3d 374 (2001) (relying on *Black's* definition of "constructive restraint" to determine what constitutes escape). The plain meaning of "restraint" is "an act of restraining, hindering, checking, or holding back from some activity" and "the condition of being restrained, checked or controlled: Deprivation of liberty." *Webster's Third New Int'l Dictionary* 1937 (unabridged ed 2002). Thus, "constructive restraint" means control that is imputed as a matter of law, even if the control does not exist in fact.

We have held that a constructive restraint must be for the purpose of arrest, *Pierce,* 226 Or App at 229, and that

the officer's purpose to apprehend the defendant must be manifest.[1] *Thomas*, 229 Or App at 460. However, the question whether defendant was constructively restrained for the purpose of arrest is a functional inquiry that depends on the totality of the circumstances, not on the utterance of magic words. In this case, viewed in the light most favorable to the state, the evidence was sufficient to present a jury question. Dorn was responding to an emergency call involving a crime in progress when he saw defendant sprinting down the middle of the street in close proximity to the reported crime scene. Dorn could see that defendant was running away from something, and he believed that defendant was the suspect in the reported crime. Defendant tried to evade Dorn when Dorn swerved in front of defendant to block his path. Dorn immediately jumped out of his car and ordered defendant to the ground. When defendant protested, Dorn told him not to move and to stay on the ground. Dorn was trying to report on his radio that he had apprehended a suspect, and he did not want defendant to get away. In fact, Dorn told his dispatcher, "I think I have the guy." From that evidence, including inferences that reasonably could be drawn from it, a trier of fact could have found, that by instructing defendant to stay on the ground, Dorn constructively restrained defendant for the manifest purpose of apprehending him and that Dorn had the purpose of charging defendant with an offense related to the call to which Dorn had been responding.[2]

---

[1] It is that requirement that, for purposes of the escape statute, distinguishes "custody" from a mere "stop." Under Oregon law, there are three general levels of encounters between police and citizens: A police-citizen encounter without any restraint of liberty ("mere conversation"); an encounter in which the officer temporarily restrains a person's liberty (a "stop"); and an encounter in which the officer either places a person under actual or constructive restraint or takes a person into custody for the purpose of charging that person with an offense (an "arrest"). *State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991); *see also* ORS 133.005(1) (defining "arrest"); ORS 131.605(6) (defining "stop"). Although an officer needs no justification for engaging in mere conversation with a citizen, he or she must have a reasonable suspicion of criminal activity for a stop and probable cause to believe that the person committed a crime for an arrest. This case does not require us to consider whether Dorn had probable cause to arrest defendant.

[2] Defendant ultimately was charged with and convicted of unauthorized use of a vehicle in connection with his underlying criminal conduct. Defendant does not assert that Dorn must have had the purpose of charging him with that offense—or any other particular offense—in order to have had the requisite purpose of charging defendant with an offense.

Finally, defendant argues that the state failed to prove that defendant knew he was in custody. In particular, defendant argues that the state was required—and failed—to prove that he knew that Dorn had the purpose of charging him with an offense. However, defendant has not elaborated on his argument beyond that assertion. He has not, for example, offered an analysis of how the *mens rea* requirement for the offense of second-degree escape applies to particular elements of the offense, nor has defendant discussed any of the pertinent case law setting out the statutory construction principles governing such an inquiry. *See, e.g., State v. Rainoldi*, 236 Or App 129, 235 P3d 710 (2010) (setting out controlling analysis). Accordingly, we confine our discussion to the limited argument that defendant has made.

As discussed, the evidence was sufficient for a trier of fact reasonably to find that defendant was constructively restrained, including that Dorn controlled defendant for the manifest purpose of apprehending him. Defendant has not explained how imputing a requirement that defendant knew that Dorn had the purpose of charging him with an offense would necessarily involve different proof. Accordingly, we reject the argument without further discussion.

Affirmed.